Affirmed.

34 C.C.P.A. (Patents)

In re EGAN et al.
Patent Appeal No. 5212.

Court of Customs and Patent Appeals.
Jan. 7, 1947.

Rehearing Denied Feb. 27, 1947.

George P. Dike, of Boston, Mass. (Cedric W. Porter, of Boston, Mass., of counsel), for appellants.

W. W. Cochran, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 16, 17 and 19 to 22, inclusive, in appellants' application for a patent for an invention relating to dispersions of rubber in polar organic liquids.

Claims 11 and 18 in appellants' application were allowed by the Primary Examiner.

Claims 16, 19, and 22 are illustrative of the appealed claims. They read:

"16. A polar organic liquid dispersion of rubber and a protective colloid which is swellable in the polar organic liquid and insoluble in water said liquid being a nonsolvent for rubber.

"19. A polar organic liquid dispersion of rubber and a protective colloid which is swellable in the polar organic liquid and is insoluble in water said liquid being a nonsolvent for rubber, sufficient liquid being present to form a continuous phase.

"22. A container closure, the sealing element of which comprises the dried residue of a polar organic liquid dispersion of crude rubber and a protective colloid which is swellable in the polar organic liquid and is insoluble in water said liquid being a non-solvent for rubber."

The references relied upon are: Plauson, 1, 392,849, October 4, 1921; Hazell, 1,-916,421, July 4, 1933.

It will be observed from quoted claim 19 that appellants' composition is a liquid dispersion of rubber in a polar organic liquid which is a non-solvent for rubber, the liquid being present in sufficient quantity to "form a continuous phase." A protective colloid which is insoluble in water and swellable in the polar organic liquid is also present in the composition.

Claim 16 is broader than claim 19 in that it does not call for a sufficient amount of a polar organic liquid to form a continuous phase, as does claim 19.

Claim 17 specifies that the polar organic liquid is an alcohol.

Claims 20 and 21 call for a container sealing composition composed of the composition defined by claim 16.

Quoted claim 22 calls for a container sealing element which comprises the dried residue of the composition defined by claim 16, except that instead of the broad term "rubber," it calls for an "organic liquid dispersion of *crude* rubber." (Italics ours.)

Appellants state in their application that the lower alcohols, ketones and certain acids may be used as the polar organic liquids which are non-solvents for rubber. They also state that the protective colloid materials which are swellable in the polar organic liquids and insoluble in water are: "Any colloidal materials which *swell or are soluble* in the polar liquids *may be used as the swellable colloidal material to be associated with the rubber in accordance with this invention.* The cellulose esters, the prolamines, certain gums such as Loba gum, and the polymerized vinyl acetate and polyvinyl acetal resins are good examples of such colloidal materials, but persons skilled in the art will recognize that these are merely representative of a *large class of*

*materials which have a tendency to swell or dissolve in the polar organic solvents."* (Italics ours.)

In the examples set forth in appellants' application it is stated that the rubber used is " * * * unmilled smoked sheet rubber * * *." It is further stated therein, however, that "By the term 'rubber' in the specification and in the appended claims, we intend to include all rubber-like materials, either natural or synthetic."

The appealed claims were rejected by the tribunals of the Patent Office "for lack of patentable invention over either of the patents to Plauson or Hazell."

The patent to Plauson relates to "Improvements in the Manufacture of Dispersoids [dispersed substances], Colloid Powder and Masses Therefrom."

The patentee states in Example 1 that:

"1 part of *neutral soap* is dissolved in 100 parts of 96% alcohol and then 5 to 10 parts of previously coarsely comminuted gelatin is added. This mixture is disintegrated at very high speed for from 2 to 5 hours in a mill provided with beaters having a liquid-tight stuffing box about its axis. Continuous treatment is then obtained by using a colloid mill or by providing a pump to circulate the alcohol-gelatin mixture through the disintegrator to a suitable reservoir and back again to the disintegrator.

"In the course of time an excessively fine dispersion of gelatin in alcohol is obtained. * * *" (Italics ours.)

The patentee also states that instead of gelatin which is used in his Example 1, " * * * other solid colloids can be employed under the same conditions, e. g. glue, agar-agar, tragacanth, gum, starch, dextrin, carrageen moss, casein, albumen, yeast, phenol condensation products, *hard rubber* and the like * * *." (Italics ours.)

The patentee further states, in substance, that after the desired degree of dispersion of rubber is secured, a homogeneous powder may be obtained by removing the "excess of alcohol * * * by centrifugalization" and the powder thus obtained by his process may be used as an "adhesive" and for other purposes.

It will be observed that the patent to Plauson discloses, among other things, a dispersion of hard rubber in a polar organic liquid—alcohol—and a *neutral soap* which accelerates the dispersion of the hard rubber. The patentee obtains an exceedingly fine dispersion of hard rubber in alcohol in the intermediate stage of his process. It is that disclosure in the patent which the tribunals of the Patent Office relied on in rejecting the appealed claims. Owing to the fact that the patentee obtained in the intermediate stage of his process an exceedingly fine dispersion of hard rubber in alcohol, there would seem to be sufficient liquid present "to form a continuous phase," as called for by appealed claim 19.

It is argued by counsel for appellant that the Plauson patent taught how to make a powdered dispersion of hard rubber which is known as "ebonite" or "vulcanite"; that hard rubber is both physically and chemically different from the kind of rubber referred to in appellants' application which, it is argued, is "soft, tough, resilient, elastic rubber," such as "crude rubber"; and that the soap referred to in Example 1 of the Plauson patent is not a colloid, "swellable" in the polar organic liquid and *insoluble in water.* Counsel for appellants concede, however, that the term "rubber," as they state in their brief " * * * has at least three technical meanings, viz., crude rubber, soft vulcanized rubber, and hard rubber which is ebonite. As in every problem of semantics, the context must be resorted to for the true meaning of the word. In the Plauson patent, the context shows that it means a hard, rigid substance composed of rubber and sulphur while applicants' specification shows that elastic non-rigid rubber was intended." It is further argued by counsel for appellants that the term "rubber" in the appealed claims should be read in the light of appellants' specification and should be interpretated to mean "soft, tough, resilient, elastic rubber—for instance, crude rubber, just as Plauson intended hard rubber."

It is true, as argued by counsel for appellants, that hard rubber is known as "ebonite" or "vulcanite" and that it is physically and chemically different from crude rub-

ber. It is also true, however, as stated in the quoted excerpts from the brief of counsel for appellants, that the term "rubber" includes hard rubber as well as crude and soft vulcanized rubber.

It has uniformly been held that in determining the patentability of claims in an application for a patent, the claims should be given the broadest interpretation which the language therein will reasonably permit and that limitations may not be read into them in order to avoid the prior art. In re Carr, 54 App.D.C. 270, 296 F. 1017; In re Ora Krichbaum, 39 F.2d 280, 17 C. C.P.A., Patents, 979; In re Irving L. Stern, 40 F.2d 1000, 17 C.C.P.A., Patents, 1234; In re Buckwalter, 75 F.2d 515, 22 C.C.P.A., Patents, 1031; In re Wait, 83 F.2d 696, 23 C.C.P.A., Patents, 1172; In re Crowell, 84 F.2d 206, 23 C.C.P.A., Patents, 1246; In re Hoover, 102 F.2d 849, 26 C.C.P.A., Patents, 1138; In re Newton et al., 110 F.2d 110, 27 C.C.P.A., Patents, 914.

Furthermore, as appears from the quoted excerpt from appellants' application, the term "rubber" was intended to cover "all rubberlike materials, either natural or synthetic." Accordingly, it is evident that at the time appellants filed their application they had no intention of limiting the term "rubber" to such as was crude, soft, tough, resilient or elastic.

We are of opinion that the term "rubber," as called for by appealed claims 16, 17, 19, 20, and 21, is sufficiently broad to include "hard rubber" disclosed in the patent to Plauson.

In his rejection of the appealed claims on the patent to Plauson, the Primary Examiner stated, among other things, in his statement to the Board of Appeals, that "Neutral soaps swell but do not dissolve in water."

It is contended by counsel for appellants that the examiner was in error in stating that neutral soaps are *insoluble* in water; that, on the contrary, such soaps are soluble in water and that, therefore, as the appealed claims call for a protective colloid which is *insoluble* in water, the patent to Plauson is not a proper reference for the rejection of the appealed claims. In that connection it is sufficient to say that

had counsel for appellants desired to question the accuracy of the Primary Examiner's statement in that regard, they might have done so either by requiring the Primary Examiner to substantiate his statement by the filing of an affidavit in accordance with Rule 66 of the Rules of Practice in the United States Patent Office, 35 U.S.C.A.Appendix, or they might have presented evidence to establish that the examiner's statement was erroneous and that neutral soaps are *soluble* in water. Counsel for appellants did neither. On the contrary, they here rely upon arguments in their briefs, without the citation of any authority in support thereof, that all neutral soaps are soluble in water.

The question involved is one of fact which must be determined from the record and not from mere arguments by counsel for appellants. See In re Burns, 83 F.2d 292, 23 C.C.P.A., Patents, 1091, and In re Lewis, 96 F.2d 1009, 25 C.C.P.A., Patents, 1273.

It is true, of course, that this court need not accept factual statements in the decisions of the tribunals of the Patent Office which are contrary to facts of which this court may take judicial notice. Some so-called "neutral soaps" are soluble in water. See Modern Soaps Candles and Glycerine by Lamborn, p. 21, et seq. We are unable to hold, however, that all so-called "neutral soaps" are soluble in water.

Whether the neutral soap which the patentee Plauson states is soluble in alcohol is also soluble in water, does not appear from the record and we are unable to hold that it is.

Counsel for appellants further argue that as the patentee Plauson states in his Example 1, hereinbefore quoted, that neutral soap is dissolved in alcohol—a polar organic liquid—such neutral soap is not swellable in a polar organic liquid, as called for by the appealed claims, and that the tribunals of the Patent Office failed to distinguish between a colloid which is *swellable* in such liquid and one which is *soluble* therein. The difficulty with that argument by counsel for appellants is that it appears from the quoted excerpt from appellants' application that the terms "swell" and "sol-

uble" are used as equivalents, that is, that colloidal materials, as stated in substance in their application, *"which swell or are soluble"* in the polar organic liquid may be used *"in accordance with this invention."* (Italics ours.)

In view of the expressed statement in appellants' application that the colloidal material may be either soluble or swellable in the polar organic liquid, it is evident that appellants were of opinion at the time they filed their application that there was no patentable distinction between colloidal materials which were either *swellable or soluble* in a polar organic liquid.

As hereinbefore noted, claim 22 differs from the other appealed claims in that it calls for crude rubber.

Obviously, if claims 16, 17, and 19 to 21, inclusive, which call broadly for rubber are not patentable over the disclosure in the Plauson patent, claim 22 which calls for "crude rubber" is not patentable in view of the hereinbefore quoted statement in the brief of counsel for appellants that the term "rubber" has "at least three technical meanings, viz., crude rubber, soft vulcanized rubber, and hard rubber;" that is to say, there is no patentable distinction, so far as concerns the appealed claims, between the terms "crude rubber" and "rubber."

We are unable, for the reasons hereinbefore stated, to hold that the tribunals of the Patent Office erred in rejecting the appealed claims in view of the disclosure in the patent to Plauson.

The appealed claims were also rejected by the tribunals of the Patent Office on an intermediate product disclosed in the patent to Hazell.

The patent to Hazell relates to the production of a rubber cement. The patentee states that it is well known that organic liquids which dissolve rubber become viscous when even small amounts of rubber are dissolved in them. To overcome that difficulty he adds to crude rubber "desolvating" agents which are non-solvents of rubber but are soluble in rubber solvents. The patentee discloses ethyl alcohol, denatured alcohol, and acetone as desolvating agents and states that they lessen the swelling of the rubber when it is placed in the solvent, thus reducing the viscosity of the mixture. To expedite the mixture of the rubber in alcohol, the patentee adds a small amount of soap such as "zinc or lead oleate or laurate, triethanolamine oleate or their equivalents." The rubber, soap and alcohol are mixed to produce a *dough,* the alcohol forming only about *eight percent of the total mixture.* Thereafter, the dough is dispersed in *"naphtha,"* a *rubber solvent,* to form the final product.

Each of the appealed claim calls for a liquid dispersion of rubber, that is, the rubber is dispersed in the liquid. In rejecting the claims on the disclosure in the patent to Hazell, the examiner and the board held that the rubber-soap-alcohol mixture disclosed in the patent is a liquid dispersion. We are unable to agree with that holding. The liquid (alcohol) is present in such a small amount in Hazell's rubber-soap-alcohol mixture, the intermediate product, that it is in the form of "dough" or a "putty-like mass." Accordingly, the patentee's intermediate product is a dispersion of alcohol in rubber, and hence, not a liquid dispersion of rubber in alcohol, as called for by the appealed claims.

The examiner suggested that the patentee might use a larger quantity of alcohol in order to obtain a liquid dispersion of rubber in alcohol. However, the idea of using enough alcohol to form such a liquid dispersion is neither disclosed nor suggested by the patentee. Furthermore, his final product is a mixture in which rubber and a *rubber solvent* (naphtha) are the principal ingredients. It is evident, therefore, that both the intermediate and final products disclosed by the patentee differ materially, and we think patentably, from the product called for by the appealed claims.

We conclude, therefore, that the tribunals of the Patent Office were wrong in rejecting the appealed claims on the disclosure in the patent to Hazell. We are unable to hold, however, for the reasons hereinbefore stated, that the tribunals of the Patent Office erred in rejecting the appealed claims on the disclosure in the patent to Plauson. Accordingly, the decision of the Board of Appeals is affirmed.

Affirmed.