38 C.C.P.A. (Patents)
### In re TAMARIN.
### Patent Appeals No. 5748.

United States Court of Customs and
Patent Appeals.
Feb. 6, 1951.

Leonard L. Kalish, Philadelphia, Pa., for appellant.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JOHNSON, Judge.

This appeal brings before us for review a decision of the Board of Appeals of the United States Patent Office, affirming the decision of the Primary Examiner rejecting, for want of patentability over the cited prior art, claims 33 and 35 of appellant's application for a patent.

The examiner indicated in his reply under (old) Rule 137, 35 U.S.C.A. Appendix, that claims 38, 39, and 40 were allowable. Referring to those claims, the board in its decisions stated: "while the Examiner has not so stated, we presume that these claims will be entered by the Examiner at a future date." The board held that claims 38, 39, and 40 were not before it for consideration and declined to make any recommendation with respect to them.

Appellant in his brief states that proposed claims A and B, printed as an appendix to his brief, were submitted to, but not considered by the board, and contends that they are allowable over the references of record. Appellant requests that if we deem "that claim 33 and/or claim 35 is not allowable but that proposed claim A and/or proposed claim B is allowable, this be indicated so that the Examiner will have the benefit of this Court's opinion in connection with the further prosecution of the application."

The board refused to consider proposed claims A and B stating, "Under the practice approved in Ex parte Moore, 1923 C.D. 13, it is not our custom to pass upon claims which have not been considered by the Examiner in the first instance, and therefore

we must decline to make any recommendation with respect to proposed claims A and B."

No error is assigned with respect to the board's action regarding claims 38, 39, and 40 or regarding proposed claims A and B, and therefore they are not properly before us for consideration. In re Isler, 152 F.2d 1002, 33 C.C.P.A., Patents, 791.

The appealed claims read as follows:

"33. A vacuum-cleaner including a housing having an electric motor mounted therewithin and having a bifurcated rear end, a detachable reel-and-handle unit pivotally mounted within said bifurcated rear end, said unit including a reel-housing, a rotatable reel mounted within said reel-housing and a hollow handle extending upwardly from said reel-housing, an extensible electric cord carried by said reel and extending from said reel-housing and through said handle and emerging adjacent the upper end of said handle, and means contained within said reel-housing for maintaining electrical contact between said electric motor and said electric-cord regardless of rotation of said reel within said reel-housing.

"35. In a vacuum-cleaner having a housing and an electric motor mounted within said housing; a reel-and-handle unit adapted for quick attachment to said housing, said unit including an axially-split two-piece generally cylindrical reel-housing constructed and arranged to be pivotally fastened to the cleaner-housing, a spring-tensioned reel journalled within said reel-housing, a hollow handle rigidly fastened at its lower end to said reel-housing, an electric-cord wound around said reel and extending through said handle with its upper free end emerging adjacent the upper end of said handle, and means contained within said reel-housing for maintaining electrical contact intermediate said electric-motor and said electric-cord regardless of rotation of said reel within said housing."

The references cited are: Tamarin 1,-921,438 Aug. 8, 1933; Dow 2,149,588 Mar. 7, 1939; Smellie 2,246,862 June 24, 1941; Smellie 2,246,863 June 24, 1941.

The subject matter of the appeal, relating to electric vacuum cleaners, is concisely described by the examiner as follows (reference numbers omitted):

"As is shown in Figures 1–5 inclusive, the main cleaner housing is provided with a slot at its rear end, within which a cylindrical cord reel housing is received. The reel housing is pivoted within the slot by the rounded heads of screws, which are received in sockets in the side walls of the main casing slot.

"A hollow handle is secured to the reel housing, and through the handle, an electric cord is slidably extended. * * *, the reel housing is formed of two half-shells. Within the said housing is a spring tensioned reel adapted to receive the electric cord. The cord may be withdrawn from the reel by pulling it through an opening at the top of the handle. As the cord is withdrawn, the spring is wound up so that it will rewind the cord onto the hub, and thus retract the cord when desired.

"The lower end of the cord is electrically connected to a pair of concentric electrical collector rings, contained within the portion of the reel. A contact block is supported adjacent the collector rings and is fixed relative to the reel housing. The block carries a pair of spring contact elements which bear against the collector rings. Leads extend from the spring contact elements through an opening in the side wall of the reel casing, whence they are extended to and connected with an electric motor, contained within the main cleaner housing."

To the examiner's description there should be added the explanation that appellant alternatively shows in his application means for providing electrical contact between the reel housing and the motor housing without extending the leads from the spring contact elements through the opening in the wall of the reel casing and into the motor housing. The alternate method of providing the electrical connection is by providing electrical contacts at the points of pivotation by means of having the conductors from the brushes connected to the opposite electrically insulated points of pivotation. Thus, through the electrically insulated contacts in the pivotation sockets a circuit can be completed to the motor. There

may thereby be eliminated the need for any wire entending from the reel or reel housing into the main or motor housing of the vacuum cleaner.

Claim 33 was rejected as unpatentable over the patents to Smellie and Dow. Smellie, 2,246,863, is conceded by the solicitor to be cumulative.

Smellie, 2,246,862, has a forward housing and two rearward extensions. Between the extensions is a pivotally mounted housing enclosing a motor concentrically surrounded by electric cord disposed upon a spring actuated take-up reel. A commutator permits current to be supplied to the motor in any position of the reel. A hollow handle attached to the housing provides a passage for the cord from the take-up reel. The cord leaves the handle near the upper end.

Dow's patent shows a main vacuum cleaner housing with two rearward projections. Above the suction chamber is a motor. Between the projections is mounted a fan belt driven by the motor. The motor and projections connecting the fan to the suction chamber are enclosed by a cover slotted to receive the fan casing. Dow has no take-up reel.

The board thought that Dow teaches the location of the cleaner motor in the main housing, rather than in the reel and handle assembly of Smellie, and that therefore it would not amount to invention to relocate the motor of Smellie in the forward portion of the main housing.

Appellant contends that Smellie's rear housing is not detachable without disassembly. He points out that to remove Smellie's rear housing assembly would require not only removing two screws holding the rear housing assembly to the forward housing, but also to remove the belt which drives the fan, from the pulley attached to the motor armature, and to remove the pulley from the armature. Such a disassembly, appellant urges, does not fairly meet the term "detachable reel-and-handle unit" in claim 33.

The solicitor states that the term "detachable reel-and-handle unit" is broad terminology adequately met by Smellie despite the above disassembly operations. The solicitor adds that the expression cannot be interpreted as restricted to a reel and handle unit capable of being detached as a unit.

■ Terms in claims are deemed to be used in their common signification unless the contrary clearly appears from the definition of terms set out in the specification. The language of claims, of course, is to receive the broadest interpretation of which it reasonably admits. The common meaning of the transitive verb "detach" is, "To unfasten and separate; to disconnect, disengage, disunite." (Oxford English Dictionary); "To part; to separate or disunite; to disengage" (Webster's New International Dictionary, 2d Ed., 1949 copyright). To our mind, the operations required to remove Smellie's rear housing go beyond mere unfastening, while we think appellant's retractable reel and handle unit is removable from its operative connection with the main housing by mere disengagement as distinguished from partial disassembly. We think the term "detachable reel-and-handle unit" means exactly what it says—a reel and handle assembly which is detachable as a *unit*. These words speak for themselves and to our way of thinking are specific. Neither Smellie nor Dow depict or teach a detachable reel and handle unit. We do not think that an artisan with Smellie's patent and Dow's patent before him would be led to appellant's concept. We hold that appellant's device, adequately defined by claim 33, embodies a concept which is patentable over the references.

■ Claim 35 was rejected as unpatentable over appellant's own patent, 1,921,438. The patent shows a reel-and-handle unit with the cord take-up reel disposed intermediate the ends of the handle. The unit is constructed so as to be readily fitted at its lower end into the handle receiving socket of a bail on the conventional vacuum cleaners circa 1928. Appellant's present reel and handle unit differs from that disclosed in his patent in that his present unit has the reel disposed at the lower end of the handle instead of intermediate the ends, and the present unit is joined to the main housing by a pivot fastening at

the reel housing itself whereas his former device was joined not at the reel housing but at the end of the handle to the conventional bail socket.

The board rejected appellant's contention that his reel housing is "itself" pivotally fastened to the main (motor) housing, stating it found no such language in the claim. The pertinent part of claim 35 reads: "* * * a reel-and-handle unit adapted for quick attachment to said housing, said unit including an axially-split two piece generally cylindrical *reel-housing constructed and arranged to be pivotally fastened to the cleaner-housing,* * * *." [Emphasis added.]

Does the italicized language, "reel-housing constructed and arranged to be pivotally fastened to the cleaner-housing" in and of itself fairly and clearly require that the reel housing itself be adapted to be pivotally fastened to the motor housing? The solicitor reiterates the board's holding that the language does not locate the pivot on the reel housing itself, and he contends that the language "permits the center of the arc in which the reel-housing swings to lie outside and beyond the reel-housing." We do not agree with the board or the solicitor. When the claim states that the *reel housing* is constructed and arranged to be pivotally fastened to the cleaner it conveys the information that it is the *reel housing* which is adapted to be pivotally fastened. The earlier Tamarin reference discloses a reel and handle *unit* which is adapted to be fastened *at the handle end* to the conventional bail socket on cleaners of that era. There is no teaching in the reference of a pivotal attachment of the reel housing itself to the main housing. We think the claim adequately specifies this feature. Though the reference discloses a reel and handle unit adapted for quick attachment to the main housing, it does not disclose or suggest such a unit so arranged as to be pivotally fastened at the reel housing to the main housing with means provided to maintain electrical contact between the motor in the main housing and the electrical cord in the reel housing in an environment which at the same time permits quick attachment of the reel and handle unit at the motor housing. Claim 35 fairly construed specifies such a device.

While we would scarcely call appellant's contribution a pioneer invention, we are of the opinion that there is patentable merit in his detachable, pivotally mounted, reel and handle unit. Progress is important in crowded arts as well as those which are still in the pioneer stage. We cannot agree that claims 33 and 35 are sufficiently presaged by the references cited to warrant the conclusion reached by the board that appellant's step is an obvious one lacking in invention.

For the reasons discussed, the decision of the board upholding the examiner's rejection of claims 33 and 35 is reversed.

Reversed.