**SUMMER INFANT PRODUCTS,
INC., Plaintiff,**

v.

**PLAYSKOOL BABY PRODUCTS,
INC., et al., Defendants.**

C.A. No. 92–267B.

United States District Court,
D. Rhode Island.

March 12, 1997.

Steven E. Snow, Thomas R. Noel, Partridge, Snow & Hahn, Providence, RI, for Summer Infant Products.

Matthew F. Medeiros, Robert Karmen, Medeiros, Karmen & Sanford, Inc., Providence, RI, for Playskool Baby Products and Hasbro, Inc.

## *OPINION*

FRANCIS J. BOYLE, Senior District Judge.

Summer Infant alleges that Playskool manufactured and sold a "baby bouncer" device which infringed upon Summer Infant's previously issued patent for such a device, U.S. Patent to Lockett III et al. No. 4,553,-786. ("the patent"). A baby bouncer is a chair for infants with one or more supports resting on the ground or other solid surface, and holding up a frame, usually rectangular in shape, over which a plastic or cloth cover is stretched, on which an infant can be placed. The frame of the device is flexible enough so that the infant can safely "bounce" in it, but sufficiently rigid and strong to support an infant's weight. The innovation Summer Infant's patent was granted to protect is a bouncer with a frame constructed so that it could be disassembled easily for storage or transport. Summer Infant's bouncer has removable frame members which are manually inserted into openings in one of two common connectors to hold the frame in place when the bouncer is in use, and are removed for disassembly. The application filed with the U.S. Patent and Trademark Office to protect Summer Infant's rights in its invention claimed as part of the invention a connector, "a body having spaced longitudinally extending openings therein ...," into which frame members are inserted during assembly, such that each piece of the bouncer's frame terminates "in connecting ends releasably insertable into said openings...." Exhibit # 1, "the patent."

Playskool's baby bouncer is not designed to be disassembled for storage or transport, but rather is designed to be collapsible or foldable, so that it takes less space when not in use. The frame members on the Playskool bouncer are permanently attached to a

plastic connector by means of plastic prongs on the connector which snap into notches or "chisel strikes" on the frame pieces. Playskool's bouncer is foldable or collapsible because its connector is comprised of two pieces or "housings" which can rotate with respect to each other such that the frame members connected to each housing can be rotated toward one another and the bouncer folds nearly flat in its "closed" position. When "opened" or set up for use, the frame of the Playskool bouncer is held in place by means of a latch on the connector which holds the two parts of the connector in the proper position in relation to one another, and thus holds the frame pieces attached to the connector housings in position as well. The latch on the connector is disengaged by means of a push-button so that the Playskool bouncer can be "closed" or folded when not in use. Unlike Summer Infant's bouncer, therefore, Playskool's bouncer does not have to be broken down into its component parts to be stored or transported when not in use.

In order to prove an infringement of its patent, Summer Infant must demonstrate that Playskool's bouncer meets each and every particular of the description of the device set forth in its patent. *Lemelson v. United States,* 752 F.2d 1538, 1551 (Fed.Cir.1985). The plaintiff need not show that the accused device literally fits within the terms of each limitation, but the accused device must meet the terms of each limitation either literally, or through some "substantial equivalent." *Warner–Jenkinson Co. Inc. v. Hilton Davis Chemical Co.,* — U.S. —, —, 117 S.Ct. 1040, 1049, 137 L.Ed.2d 146 (1997). Therefore, if Summer Infant can show with respect to each limitation in its patent claim that each component of the Playskool bouncer either fits within the literal terms of the patent or "performs substantially the same function in substantially the same way to obtain substantially the same result" as the corresponding component in the Summer Infant bouncer, the plaintiff must prevail in this infringement action. *See Id.; Conroy v. Reebok Intern., Ltd.,* 14 F.3d 1570, 1574 (Fed. Cir.1994). Whichever type of infringement is alleged, analysis of Summer Infant's infringement claim requires a two-step process: first, a determination of the patent's mean-

ing, and second, a determination of whether the accused bouncer infringes upon the patent terms. *Conroy,* 14 F.3d at 1572; *Charles Greiner & Co. Inc. v. Mari–Med Mfg., Inc.,* 962 F.2d 1031, 1034 (Fed.Cir.1992).

At trial, a jury found that the Playskool bouncer did not literally infringe on Summer Infant's patent. The jury did find, however, that Playskool's bouncer infringed on the patent under the "doctrine of equivalents." This verdict could only have come about if the jury found that the Playskool bouncer does not duplicate the device described in Summer Infant's patent exactly, but also found only "insubstantial" differences between the Playskool bouncer and the bouncer the patent describes. The jury therefore found that, despite any minor differences between the Playskool bouncer and the patented device, the Playskool bouncer infringes on the patent because Playskool has used the idea defined by the patent, in violation of Summer Infant's patent rights.

After the jury rendered its verdict, Playskool made a proper motion for a judgment as a matter of law in accordance with Fed. R.Civ.P. 50. This rule provides that "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue." Fed.R.Civ.P. 50(a)(1) (West Supp. 1996). In essence, Playskool asks this court to find that no reasonable jury could have found for Summer Infant given the evidence presented at trial, and Playskool is therefore entitled to have the jury verdict set aside and judgment entered in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (like a motion for summary judgment, this motion presents a question of whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented); *Conroy,* 14 F.3d at 1575 (summary judgment standard applied in patent case). Playskool also moved, in the

alternative, for a new trial under Fed. R.Civ.P. 59. In the context of the defendant's motion, this court must first determine what the terms of the claim mean, and then determine if substantial evidence was submitted at trial, so that a reasonable jury given proper instruction as to the meaning of the patent's terms could have come to the same verdict as the jury in this trial did. *Markman v. Westview Instruments, Inc.*, — U.S. —, —, 116 S.Ct. 1384, 1395, 134 L.Ed.2d 577 (1996) (interpretation of terms in patent claim a question of law for judge to decide); *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 756 F.2d 1556, 1560 (Fed.Cir.1985) (procedure for judgment as a matter of law).

### A. Meaning of the Patent

With regard to the first step in this process, there has been confusion for some time as to whether the judge or the jury is the proper arbiter of the meaning of patent terms. *See Markman*, — U.S. at —, 116 S.Ct. at 1389. During the pendency of Playskool's motion, however, the Supreme Court issued a writ of certiorari for *Markman*, a case on precisely this issue. *Id.* The procedural posture of *Markman* was also similar to that of this action, because the trial court judge in *Markman* had granted a judgment as a matter of law after a jury verdict in favor of a patentee. *Id.* The parties in this case therefore agreed to this court's stay of decision in this matter until the Supreme Court handed down its decision in *Markman*, which would be very useful in determining the outcome of this motion. Ultimately, the Court held that issues concerning the meaning of a claim, including the meaning given to terms of art contained in the claim, are matters of law for the judge to determine. *Markman*, — U.S. at —, 116 S.Ct. at 1396. Therefore, this court must define the meaning of terms in the claim which Summer Infant asserts Playskool infringed, then determine what effect, if any, this interpretation of the patent might have on the instant motion. *Id.; Jamesbury*, 756 F.2d at 1560.

■ With respect to at least one term in the patent Summer Infant seeks to defend, "releasably inserted," this court holds that the broad definition proffered by the plaintiff is inappropriate. Summer Infant asserts that a proper definition of the term "releasably inserted" used in relation to the manner in which the frame pieces are attached to the connector would include within it any attachment of frame pieces to a connector that allows the frame pieces to be later moved in relation to one another for storage or transport of the bouncer. Read in the context of the patent claim, however, "releasably inserted" can only mean that these frame members are not meant to be permanently affixed to the connector. *See In re Tamarin*, 38 C.C.P.A. 872, 187 F.2d 160, 162 (Cust. & Pat.App.1951) (terms in patent claims are deemed to be used in their common signification unless the contrary clearly appears from the definition of terms set out in the specification, citing dictionary definitions); *In re Egan*, 34 C.C.P.A. 843, 159 F.2d 452, 454 (Cust. & Pat.App.1947) (resort to context necessary to determine true meaning of word in patent). Indeed, perhaps the most essential feature of the Summer Infant bouncer's connector is that the frame members are not permanently affixed to it, so that the bouncer can be easily disassembled for storage or transport. *See Howard v. Detroit Stove Works*, 150 U.S. 164, 14 S.Ct. 68, 37 L.Ed. 1039 (1893) (the essential features of an invention which are necessary to the accomplishment of the desired result must be adequately described to be afforded patent protection). Under these circumstances, "releasably inserted," as used in the patent, can only be given its obvious and plain meaning, that the device's frame members are removable from the connector, so that the device can be disassembled for storage or transport.

### B. Application of proper definition to Motion for Judgment as a Matter of Law

■ Substantial evidence was submitted to the jury to show that literal infringement of the patent was found in Playskool's bouncer with respect to each element of the patent claim, save one. Summer Infant relied on the doctrine of equivalents to satisfy the infringement requirement with regard to the limitation requiring that frame members be "releasably inserted" into a connector to hold

the bouncer together, and to allow for easy disassembly for storage and transport. Summer Infant asserts, and Playskool denies, that the frame members inserted into the connector on Playskool's bouncer are "releasably inserted," as that term is used in the context of the patent. Summer Infant claims that the Playskool bouncer's connector, while not fitting within the literal terms of the patent, is so substantially similar that the Playskool connector is the "equivalent" of the patented connector for patent enforcement purposes, and the Playskool bouncer's connector therefore infringes under the doctrine of equivalents.

Allowing plaintiffs to look beyond the literal words of the patent to prove that the accused infringer has violated the patentee's rights by means of a substantial, though not literal, copy of an element in the patent is known as the doctrine of equivalents. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950). This doctrine protects against a "fraud on the patent," avoidance of the ban on literal infringement by making "insubstantial" changes in the patented device or process while pirating its essential features. *Id.* Like an action for literal infringement, this doctrine protects the new idea claimed in the patent, but the doctrine protects the patent from an infringement that is not a precise duplicate of the original. *Id.* at 607, 70 S.Ct. at 856 (". . . to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing."). The doctrine of equivalents recognizes that "[o]utright and forthright duplication is a dull and very rare form of infringement," and that protection of patented innovations requires not only the prevention of exact copies, but also of duplicates which do not differ from the original in any substantial way. *Id.* Therefore, if each component of the Playskool bouncer performs "the same work, in substantially the same way, [to] accomplish substantially the same result," as the corresponding component described in the patent does, then Playskool's device does, in fact, infringe upon Summer Infant's patent rights, even if the two inventions "differ in name, shape or form." *Id.* at

609, 70 S.Ct. at 856, *quoting Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929).

The question is essentially one of the substantiality of the differences between the patented device and the accused device. *Id.* at 608, 70 S.Ct. at 856. The *Graver Tank* analysis of function, way and result remains the fundamental test of the substantiality of differences between the patented invention and the accused device. *Hilton Davis,* —— U.S. at ——, 117 S.Ct. at 1054. Therefore, if evidence regarding function, way and result alone establishes that the difference between the patented invention and the accused device is substantial in any way, the doctrine of equivalents provides no protection for the patent. *Id.* However, "[e]quivalence, in patent law, is not the prisoner of formula and is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose and in every respect." *Graver Tank,* 339 U.S. at 609, 70 S.Ct. at 856–57. Factors to consider include the purpose for the particular element of the patent, the qualities the feature brings in combination with the other elements, and the function the element under consideration is intended to perform. *Id.*

Summer Infant asserts that Playskool's connector is the "equivalent" of the connector defined by the patent because it meets the *Graver Tank* function-way-result test. The jury must have found that the Playskool connector was equivalent to the Summer Infant connector to find a patent infringement, because Summer Infant did not allege that the Playskool connector was literally within the description of the connector found in the patent. In the context of this motion, however, Playskool bears the burden of showing that under a proper interpretation of the terms of the patent no substantial evidence was submitted at trial such that a reasonable jury could find for Summer Infant on this issue. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Markman v. Westview Instruments Inc.,* 52 F.3d 967, 975 (Fed.Cir. 1995), *aff'd* —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

Playskool has met its burden of showing that no substantial evidence was submitted in this case upon which a reasonable jury could find that Playskool's connector is an "equivalent" to Summer Infant's with regard to releasability of frame members. Summer Infant's own expert, Dr. Donald Quigg, stated that notches or "chisel strikes" on the ends of the frame members inserted into the Playskool connector pass over plastic prongs in the connector openings, which thereafter hold the frame members in place. Trial Transcript, testimony of Dr. Quigg, Thursday, January 13, 1994 at 33. Once inserted into the connector openings, the frame pieces on the Playskool bouncer are not meant to be removed. As Dr. Quigg demonstrated at trial, the Playskool frame members can be dislodged from the connector with some effort, but all of the pieces of the Playskool bouncer are designed to remain together once its initial assembly is completed. Dr. Quigg further testified that the fact that the Playskool bouncer can be folded by releasing a plastic latch holding together the two housings of the Playskool connector and rotating the frame pieces to meet each other does not make the frame members "releasable" within the meaning of Summer Infant's patent.

On the basis of this evidence, no reasonable jury could find that the frame pieces inserted into the connector on the Playskool bouncer are equivalent to the "releasably insertable" frame members on the Summer Infant bouncer, within the meaning of that term as used in the patent. Both bouncers can be collapsed for transport or storage because of the way the frame pieces are held together, and thus both connector designs may be said to have a common "result." *See Graver Tank*, 339 U.S. at 608, 70 S.Ct. at 856. In addition, since the connector on each bouncer both holds the frame in place when the bouncer is in use, and allows the bouncer to be collapsed for easier storage or transport, both connectors may be said to have a common "function." *Id.* The Playskool bouncer accomplishes this in entirely a different manner than the Summer Infant patent describes, however, and therefore does not meet the *Graver Tank* test of identity of "way" for equivalence. *Id.*

Given the completely different way in which the Playskool bouncer connector allows its bouncer to be collapsed for storage or transport, the difference between it and the connector described in the patent is "substantial." *Id.* Therefore, on the evidence presented, no reasonable jury could have found for Summer Infant on this issue. *Hilton Davis*, —— U.S. at ——–—— n. 8, 117 S.Ct. at 1053–54 n. 8. Playskool is entitled to judgment as a matter of law, because a finding in favor of Summer Infant on this issue is necessary to a finding in its favor on the infringement claim. *Id.;* Fed.R.Civ.P. 50(a). Judgment will enter for defendant Playskool on the patent infringement claim. Both parties will pay their own costs.