40 C.C.P.A.(Patents)

### Application of HUDSON.

**Patent Appeal No. 5950.**

United States Court of Customs and Patent Appeals.

June 3, 1953.

Parrott, Richards & Sims, Charlotte, N. C. (Channing L. Richards, Charlotte, N. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY and COLE, Judges.

COLE, Judge.

The issue presented in this appeal relates to the patentability of a method of removing excess impregnant from impregnated wood.

Concededly, the appellant's application discloses novel subject matter, the tribunals of the Patent Office having allowed accompanying claims. Claim 8, however, was somewhat controversial and was finally rejected on the ground that it was too broad, indefinite, and unpatentable over the prior art of record. The sole question for determination here concerns the correctness of that decision.

Wood is preserved by impregnation with chemicals such as creosote. In the course of subsequent commercial usage of such treated wood, the impregnant therein has a tendency to "bleed" onto the surface of the wood, thereby presenting a wet or sticky exterior which is objectionable in many ways, particularly in interfering with the successful utilization of the wood product.

The applicant asserts that the "bleeding" characteristic of the impregnated wood, commonly demonstrated in the case of creosoted telephone poles and railroad crossties, has never, until his inventive process was discovered, satisfactorily been overcome. Applicant's method of removing the excess impregnant, as set forth in rejected claim 8, reads as follows:

"8. The method of removing excess impregnant from impregnated wood and thereby minimizing subsequent bleeding of the impregnant onto the surface thereof, which comprises heating the impregnated wood in a closed space by introducing into said closed space vapors of an organic solvent for the impregnant having a boiling point at the pressure in said closed space not higher than about 320° F. so that said heating is carried out at a temperature substantially below the temperature at which said wood would be damaged by heating, but said boiling point being not less than 25° F.

to 50° F. higher than the initial temperature of said impregnated wood whereby said wood is heated by said vapors so that excess impregnant in the outer layers of the wood is effectively expanded and forced to the surface of said wood, continuing introduction of said organic solvent vapors until said excess impregnant is extracted to a desired extent by condensate of said organic solvent continuously formed on the surface of said wood in said closed space for solvent action at full strength, and draining and recovering said condensate and extracted excess impregnant from said wood."

In general, it may be observed that the method involves treating the impregnated wood with vapors of an organic solvent, (which is a solvent for the particular impregnant employed) said solvent having a boiling point above the temperature of the wood to be treated. More specifically, the claim is drawn to a method whereby the organic solvent vapors are utilized for the dual function of heating the impregnated wood to a temperature sufficiently high so as to expand and force the excess impregnant to the surface of the wood, and secondly to extract said impregnant by condensation of the organic solvent vapors on the surface of the impregnated wood as it is heated by the vapors.

The admittedly novel feature of applicant's method is found to reside in the dual function obtained, i. e., heating and solvent action. Unquestionably, this is the very essence of the disclosure. The examiner made it explicit in his opinion, and we quote from the text thereof, "that it is by selecting solvents of certain boiling points that appellant gets the dual function of the solvent and the heating effect of the vapor." Bearing this in mind, but with complete regard for the rule that ordinarily action by the Patent Office in rejecting or granting claims is not citable as sufficient authority in appeals before this court from decisions affecting other claims in the same application, we now observe wherein the allowed claims of the application differ from the claim in question.

Each of the allowed claims contains a limitation which defines the boiling point range of the solvent used in the process. At standard pressure, or at the pressure in the closed space, the recitation of the boiling point range as being from 240° F. to 320° F. was considered to be an adequate definition, neither unduly broad nor indefinite. The method of these claims was considered patentable and no prior art was cited in opposition to patentability.

Rejected claim 8 differs from the allowed claims in one material respect. The lower limit for the solvent boiling point range is not stated in the same succinct terms as it is in the allowed claims, but instead defines the lower limit in a manner indicative of the temperature differential above the initial temperature of the impregnated wood to be treated. Considering again the actual language of the appealed claim, the controversy is predicated upon the alleged indefiniteness of the following:

"* * * having a boiling point at the pressure in said closed space not higher than about 320° F. * * * but said boiling point being not less than 25° F. to 50° F. higher than the initial temperature of said impregnated wood * * *"

Claim 8 is intended to cover the use of solvents boiling below 240° F.

The examiner, after noting that the upper boiling limit was properly defined in terms corresponding to those set forth in the allowed claims, rejected claim 8 on the basis of the following reasons:

The references relied on are:

"Clark          322,521    July 21, 1885;
"Bohm           649,155    May 8, 1900;
"Newton       1,203,038    Oct. 31, 1916;
"Teesdale     1,295,828    Feb. 25, 1919;
"Booty et al  2,118,036    May 24, 1938.

         *    *    *    *    *    *

"Claim 8 stands rejected as being unpatentable over either Newton or Teesdale in view of either Clark, Bohm or Booth [Booty] et al. Each of the primary references discloses that it is old to remove excess impregnant from impregnated wood by applying steam

to the wood in a closed chamber. Each of the secondary references teaches the use of organic solvents for removing excess impregnant from impregnated materials. * * * claim 8 is not limited as indicated * * * to the use of organic solvents having boiling points within the range from 240° F. to 320° F. at standard pressure, or at the pressure in the claimed close space, but includes the use of organic solvents that may have boiling points at standard pressure or at the pressure within said closed space equal to or below the temperature of the steam used in the Newton or Teesdale process. * * *

* * * * * *

"Claim 8 stands further rejected as being unduly broad and indefinite in the recitation of 'an organic solvent— not less than 25° to 50° F. higher than the initial temperature of said impregnated wood'. Since this claim does not define what the initial temperature of the impregnated wood should be, the claim does not limit the organic solvents that appellant employs to any 'certain boiling points' * * * but includes the use of organic solvents that may have boiling points equal to or well below the temperature of the steam employed in the Newton Process. * * *"

The Board of Appeals, in affirming the examiner's opinion, appeared to rely primarily on the thought that the claim in question was indefinite or meaningless because of the failure to assert the initial temperature of the impregnated wood. In summarizing, the board said:

"* * * Without an adequate statement of the boiling temperature range of the solvent under consideration the claim fails to properly define the alleged invention or to patentably distinguish the subject matter over the art."

The solicitor, in his brief, stated:

"At the outset, it is to be noted that it is conceded that appellant's application discloses an invention, which is patentable when the boiling tempera-

ture range of the solvent under consideration is adequately defined, as in the allowed claims. * * *"

This concession, carried further, as is logical, rejects the listed prior art references provided we find, as we will, that the boiling temperature range of the solvent under consideration is adequately defined. It is clear to us that the method of removing excess impregnant from impregnated wood by applying steam in a closed chamber, as disclosed in the Newton or Teesdale patents, or by using organic solvents in the manner presented by the other references referred to as secondary, is sufficiently different from the procedure laid out and followed by the applicant's theory, as to entitle it to complete segregation therefrom in a patent sense. The prior art phase of the case will be discussed in more detail in the course of the opinion.

The patentability of the claim in question depends, therefore, primarily on whether the lower boiling point limitation of the particular solvent used in the process is properly defined. In substance, this is an issue of fact to be resolved in the light of applicable law pertinent thereto.

■■ The certainty required in patents is not greater than that which is reasonable, having regard to the subject matter involved. Minerals Separation, Ltd. v. Hyde, 242 U.S. 261, 37 S.Ct. 82, 61 L.Ed. 286. This well established proposition of law readily lends itself to flexible and practical application in appraising the sufficiency of patent disclosures. That a claim should be clear and definite is, of course, elementary, but the degree of definiteness necessary to satisfy the law varies in accordance with the facts and circumstances of each case. In the case of General Electric Co. v. Wabash Appliance Co., 304 U.S. 364, 58 S.Ct. 899, 901, 82 L.Ed. 1402, the court said:

"* * * Patents, whether basic or for improvements, must comply accurately and precisely with the statutory requirements as to claims of invention or discovery. The limits of a patent must be known for the protection of the patentee, the encouragement of the

inventive genius of others, and the assurance that the subject of the patent will be dedicated ultimately to the public. The statute seeks to guard against unreasonable advantages to the patentee and disadvantages to others arising from uncertainty as to their rights. The inventor must 'inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not.' The claims 'measure the invention.' * * "

■ We cannot conclude that the presumption of correctness attaching to the decision of the Patent Office tribunals in the instant case is sufficient to overcome what we consider to be an aptly and adequately drawn claim, which fully defines the invention and which finds clear and abundant support in the specification disclosure.

The applicant states that the temperature range of approximately 240° F. to 320° F. is, in most instances, the practical operating range of the process and covers substantially all the compounds used in carrying out the vapor treatment. Characteristically, these compounds are inflammable and hence the lower boiling solvents must be considered in the light of their respective low flash points as a safety measure in carrying out the process. The temperature limit of 240° F. is deemed a proper observance in this regard, but operation below this point is said to be unwise. The accuracy of the foregoing was not challenged by the Patent Office and accordingly, definition of the solvents used in the process as having a boiling point within the temperature differential stated (240°–320° F.) was held to sufficiently express allowable subject matter in view of the dual function obtained by the method.

The claim on appeal was intended to be broader with respect to boiling point limitation than were the allowed claims. The applicant explains that there are certain organic solvents that are non-inflammable, such as trichlorethylene, which have boiling points below 240° F. Inasmuch as the need for safety precautions aforementioned are of no concern in this instance, the lower temperature limit basically becomes a matter of providing effective heating by the solvent vapors whereby expansion and extraction of the impregnant, i.e., the dual function, is realized. The success of applicant's process does not necessarily depend on the employment of an organic solvent boiling between 240° F. and 320° F., as non-inflammable solvents boiling below the lower limit of this temperature differential may be used in the process so long as the hot vapors thereof perform in the stated dual capacity.

The claim on appeal requires the lower boiling point of the solvent to be not less than 25° F. to 50° F. higher than the initial temperature of the impregnated wood to be treated. The initial temperature of the wood is not stated in claim 8 and the Board of Appeals expressed the view that the appealed claim was inclusive of the treatment of such wood at atmospheric temperature, or below, or as indicated by example in the text of the application on appeal, the treatment might be carried out immediately following the preservative impregnation of the wood. The temperature prevailing in this latter instance would necessarily be in excess of that prevailing where applicant's method is applied to wood at atmospheric temperature or below. The board held the limitation in question, by reason of the foregoing, to be indefinite or meaningless.

The applicant, in disputing the accuracy of the board's conclusion in this respect, stated as follows:

"* * * the initial temperature of the wood to be treated may vary from instance to instance depending, for example, upon the type of impregnation treatment that has been used, and this initial temperature might well be a normal atmospheric temperature, or below, as the Board of Appeals has suggested. * * *

* * * * * *

"* * * it is submitted to be apparent that the determination of the initial temperature of wood to be treated according to applicant's method is certainly within the expected skill of

the art without further directions from applicant, and that having determined this initial temperature the necessary boiling point for the organic solvent to be used is specified with certainty by claim 8 on appeal. * * *

* * * * * *

"* * * The impregnated wood to be treated will obviously be at some initial temperature that can be determined readily with definiteness and certainty, and if the wood is then subjected to treatment by applicant's method with vapors of an organic solvent having a boiling point sufficiently above the initial temperature of the wood as defined in claim 8 on appeal then, the novel *dual function* of heating and solvent action will be obtained by the solvent vapor treatment of applicant's method no matter what the initial temperature of the wood to be treated happens to be." [Italics quoted.]

■■ As we have previously indicated, we are satisfied that claim 8 of the instant application is sufficiently definite to satisfy the requirements of the law, and that the specification fully supports the claim and describes the alleged invention in clear and concise terms so that those skilled in the art might practice it without the necessity of further instruction. That the claims themselves must adequately point out, and distinctly claim the invention, is a fundamental consideration, and we have always found ourselves unwilling to deviate from a strict adherence to that rule in considering claims of an ex parte patent application. It appears to us, however, that the fact that claim 8 is inclusive of the treatment of impregnated wood at atmospheric temperature or below does not render the claim defective for indefiniteness, nor is it thought to be unduly broad in the inventive concept claimed.

The initial temperature of the wood is easily to be ascertained and the lower boiling point limitation of the solvent used in the process would seem to be a mere matter of basic arithmetic computation. The applicant clearly states in his specification that the operating temperature employed in the method must be sufficiently above the tem-

perature of the wood to be treated so that the excess impregnant in the outer layers of the material is expanded and forced to the surface. In this respect, the organic compound used as a solvent for the particular impregnant to be removed must, in the words of the claim in question, have a boiling point "not less than 25° F. to 50° F. higher than the initial temperature of said impregnated wood," (the upper limit being 320° F.) and while the claim may be said to be broadly stated, nevertheless, the invention itself is broader than that defined in the allowed claims of the application.

Counsel for the Commissioner of Patents presents this statement in his brief:

"* * * Appellant conceded in his argument before the Board of Appeals on request for reconsideration * * * that 'Claim 8 was intentionally drawn * * * to cover and include instances where the process * * * is used for treating "wood which is at normal atmospheric temperature or below." ' Assuming a normal atmospheric temperature of 70° F., claim 8 only requires that the boiling point of the solvent be 'not less than 25° F. to 50° F.' higher, that is, about 95° F. to 120° F. The lowest limit given in either Newton or Teesdale, namely, 220° F., is not less than 120° F., as required by claim 8 under the interpretation hereinbefore used."

The foregoing statement is hardly consistent with the further argument that claim 8 should be rejected because of indefiniteness. Counsel has effectively demonstrated why the claim is easily capable of translation into what it clearly means and intends.

Considering now the prior art of record, it has previously been said that the primary references disclose a method whereby excess impregnant is removed by application of steam to the impregnated wood, while the secondary references teach the use of an organic solvent for removing excess impregnant from impregnated materials. The solicitor argues that it would be well within the skill of the worker in the art to use one of the solvents of the secondary references and apply it in the process of either Newton or Teesdale. Further argu-

ment is made to the effect that the claim in question is unpatentable in view of the fact that the temperaure limitation therein may be below the temperature of the steam used in the process of the primary references.

We do not regard this argument as presenting any serious obstacle to the patentability of the appealed claim. It is quite apparent that the dual function of the applicant's method is the novel feature thereof, and the fact that the organic solvent used in applicant's process may boil below the boiling point of water would hardly appear to be material, so long as the stated dual function is obtained. Steam is not an organic solvent, and we must express our agreement with the following statement from the applicant's brief:

"* * * the solubilizing action provided by the dual function of the condensing organic vapor which is characteristic of applicant's method, * * * is not obtained by the processes disclosed in the primary references, * * *"

Further, we are in agreement with the applicant in his reference to the secondary patents, as follows:

"* * * In *Clark 322,521,* the oily residues left on leather in the production of 'French glazed kid' are removed by washing the leather in one or more baths of an organic solvent such as naphtha. In *Bohm 649,155,* a waterproofing treatment of leather is described in which the leather is first treated with a solution of wax and nitrobenzene or the like, and is then washed in a bath composed in equal parts of alcohol and benzene. In *Botty 2,118,036,* a treatment of resin impregnated wood with a solution of methyl alcohol is disclosed for preventing frothing of the resin during curing.

"The method disclosed by the application on appeal is clearly distinguishable over any of the washing procedures in the above secondary references in that according to applicant's method the active solvent is not contaminated by the impregnant being extracted as is the case with washing. According to applicant's method an or-

ganic vapor is used in such a manner that condensate forms to effect the extraction and drains off to carry away the extract. As a result contaminated solvent is continually removed and replaced with fresh solvent. Moreover, the procedure of applicant's method results in contamination of only a minimal amount of solvent which simplifies the problem of solvent recovery; and, further, applicant's method requires far less solvent than a washing treatment in which, as indicated by all of the above secondary references, enough solvent must be provided to allow for immersing the material being treated." [Italics quoted.]

We think it manifest that applicant's method involves invention and that the appealed claim has been satisfactorily drawn to define that invention, and for the reasons hereinbefore stated, the decision of the Board of Appeals is reversed.

Reversed.