Johnson, Chief Judge,
delivered the opinion of the court:
This is an appeal from a decision of the Patent Office Board of Appeals, rejecting method claims 7, 8, 12, 14, 16, 38-44, 46 and 47 as not supported by adequate disclosure in appellant’s application serial No. 54,748, filed October 15, 1948, for “Destructive Distillation of Substances and Recovery of Decomposition Products.” Each of the method claims, except claim 12, as well as each of apparatus claims 22, 48 and 50, was also rejected by the board as unpatentable over the prior art.- Seven apparatus claims stand allowed.
The following claims are representative of those on appeal :
38. A method of treating a substance for the recovery of decomposition products therefrom, comprising heating the substance substantially in the absence of a combustion-supporting fluid and at a pressure slightly above atmospheric to progressively increasing temperatures which are substantially no greater than v/ill progressively cause liquid decomposition products to form substantially at the substance; providing respective paths of product removal leading from said substance to respective places of recovery; maintaining said paths at respective temperatures above points at which said liquid products will congeal but below points at which they will vaporize; and removing said liquid decomposition products from the residual mass of said substance in their said liquid state, by causing them to travel along said paths, whereby said liquid products will be retained in their said liquid state from the time of formation thereof throughout the recovery thereof, the said procedure from the time of product formation to product recovery being characterized by the substantial absence of thermal condensation.
*983 48. Apparatus for the decomposition of substances and the recovery of decomposition products therefrom, comprising a substantially stationary retort structure defining a heat treatment chamber having a closed, sloping bottom and a top which is open; a cover spaced apart from said open top for closing but not sealing said retort structure, said cover having depending side walls extending below said retort chamber and spaced apart laterally therefrom, and said cover being closed on all sides and the top but open at its bottom; an open container within said chamber for the support of a substance to be treated; means for heating said substance to decomposition temperatures; and a gravity-flow recovery conduit leading downwardly from the low level of the said bottom of the heat treatment chamber.
The invention relates to a method and apparatus for the recovery of decomposition products formed during the destructive distillation of materials such as oil and coal. Whereas in prior art processes .the material under treatment has been subjected to heat until such time as the decomposition products pass off from said material as vapors (the vapors being subsequently condensed), the instant process involves heating such materials only to the degree at which liquid decomposition products form substantially at the substance of the materials (but not so much as to vaporize such liquid products), and removing said liquid products, by gravity flow, from the heating zone without vaporizing them. As is stated in appellant’s brief, “This is merely a matter of careful control of heat application and absorption, involving well-known techniques * * The principal advantage of the instant process is alleged to be the avoiding of “expense and other undesirable results of conventional vaporation (sic) practices followed by conventional condensation practices.”
The reference relied upon are:[1]
Trent, 1,814,463, July 14, 1931.
Harriet, 1,906,755, May 2, 1933.
Storrs, 2,349,387, May 23, 1944.
The Trent patent discloses a process for carbonizing materials such as coal, mixtures of oil and coal, etc. The process comprises conveying the material to be treated through a retort containing zones of progressively increasing temperatures and separately withdrawing and collecting the different decomposition products which are evolved from said material.
In the view we take of this case it is not necessary to describe in any detail the other references relied upon. Suffice it to say that the *984 Karrick patent, insofar as pertinent, discloses beating of carbonaceous material by radiant beat generated by a beating medium which does not contact the substance moving through the retort, as well as heating by combustion products which do contact the substance.
Storrs, insofar as pertinent, discloses the extrusion of carbonized char as it is removed from a heating zone.
The examiner rejected each of the method claims on three grounds: (1) as not supported by the original disclosure; (2) as not being supported by an adequate disclosure; and (8) as unpatentable over the prior art. The board reversed the examiner as to (1), affirmed his rejection as to (2) and affirmed his rejection in part as to (3). Thus, only the second and third gounds of rejection are before us.
We will first consider the second ground of rejection. While, upon our initial examination of the board’s opinion, we were in considerable doubt as to the board’s reasons for this ground of rejection, more careful consideration of its statements leads us to conclude that the board is of the opinion that the disclosure is inadequate in the sense that it fails to instruct one skilled in the art how to perform the process defined by the appealed claims and therefore does not comply with the requirements of the first paragraph of 35 U. S. C. 112.[2]
Thus, the board stated:
* * * The contended invention of the present case resides in causing liquid decomposition products to form substantially at the substance. Appellant has the burden of making a clear disclosure of the actual operating conditions which will enable this result to be obtained. We are not satisfied that this burden has been assumed. In effect, the disclosure is a description of progressive heating of the substance being treated which- does not substantially differ from prior art procedure, coupled with a statement of result, namely, the appearance of the decomposition products in liquid form at the substance. Applicant discloses progressive heating and the establishment of a temperature gradient within the heating zone. Trent has progressive heating and a temperature gradient. One cannot learn from the specification what the operating conditions are which appellant imposes on his process and which are supposedly absent from Trent which enable applicant to get the allegedly novel and patentable result. Appellant states “that the respective temperatures progressively attained by the substance are substantially no greater than will release and permit the recovery of the respective decomposition products as liquids.” * * * and that “the knowledge requisite for determining the amount and rate of heat input to the heating zone and the rate of travel of the substance along the heating zone, necessary for any given substance to be treated, having due regard for the physical characteristics thereof within the heating zone, is advantageously acquired by laboratory analysis of the substance either under batch treatment irarsuant to the method, as hereinafter set forth in detail, or by use of a miniature continuous retort pursuant to the method of invention. * * * We *985 find no detailed explanation of any laboratory method. We find no example of temperature, rate of heat input, rate of travel of the substance being treated etc., even for one particular hind of substance. We appreciate the fact that the conditions which we mention would necessarily vary with different substances, but we are of the opinion that the rationale of appellant’s process should have been fully elaborated in connection with at least one substance with which appellant has obtained the result which he is asserting differentiates his process from the prior art. The disclosure in respect to the low temperature carbonization of coal * * * does not constitute such a disclosure as we have indicated to be necessary. The statement that “in general, bituminous coals may be raised in temperature to produce a smokeless char at the rate of from approximately 100° to approximately 500° C. per minute, depending upon the heat absorptive capacity of the bed of material.” is too broad to aid one in ascertaining what temperature is to be used with bituminous coal to produce a decomposition product substantially at the coal surface, instead of a vaporous product. * * *
We are of tlie opinion, that the board has erred in this rejection and that it accordingly must be reversed as to this ground.
It is true that at no point has appellant set forth a completely detailed analysis of the condition employed in the application of the process to any one substance. Thus, though appellant does point out that, with respect to the use of bituminous coals, a constant temperature throughout the retort of 750° C. is maintained (see especially claim 43) the coal temperature being increased progressively depending upon the duration of its stay in the retort (which, in turn depends upon the rate of travel of the coal through the retort), there is no specific statement as to the rate of travel of such coal through the retort. At best there is the disclosure that “in general, bituminous coals may be raised in temperature * * * at the rate of from approximately 100° to approximately 500° C. per minute, depending upon the heat absorptive capacity of the bed of material.” We would concede that this broad statement is not, in and of itself, sufficient to enable one, without experimentation, to determine the rate of travel of the substance through the retort necessary to obtain the decomposition products in liquid form rather than, as in the prior art processes, in vapor form. Nor would the general statement to the effect that
It is a feature of the invention that the rate of travel of the substance along the heating zone is so regulated, with respect to the heat absorptive capacity of the substance in any given physical form, and, further, with respect to the applied heat, that the respective distillation temperatures progressively attained by the substances are substantially no greater than will release the respective decomposition products in liquid form, and, further, than will permit the recovery of same from the heating zone in their said liquid or in heavy vapor form.
enable one skilled in the art to practice the invention without experimentation to determine the heat absorptive capacities and the points at which the various decomposition products are evolved.
*986 Appellant, however, does not stop at this point. He also discloses a specific embodiment of apparatus designed to be used for batch treatment of a substance in accordance with the inventive concept of his process and which can be used for “the analysis of a distillable substance in laboratory practice to achieve a truly representative quantitative determination of the liquifiable constituents thereof, and to derive the requisite knowledge as to heat absorptive characteristics, etc. for controlling the distillation procedure with respect to any given substance.”
And in the affidavit of George W. Carter, which affidavit is in the record and before us for our consideration, it is stated that:
I have also personally observed that the flow of liquids from the substance being treated and the occurrence of the clouds of liquid droplets are dependent upon the quantity of heat which the substance is permitted to absorb during the treatment. If too much heat is absorbed, it is readily determined by disappearance of the clouds of liquid droplets and by the substitution of visible gaseous vapor and by a reduction in flow of liquids to recovery. Thus, the proper rate of heat application for any given substance is easily determined by observation.
We are of the opinion that, under the foregoing circumstances, appellant has satisfied the requirements of the first paragraph of 35 U. S. C. 112. It must be borne in mind that, while it is necessary that an applicant for a patent give to the public a complete and adequate disclosure in return for the patent grant, the certainty required of the disclosure is not greater than that which is reasonable, having due regard to the subject matter involved. In re Hudson, 40 C. C. P. A. (Patents) 1036, 205 F. 2d 174, 98 USPQ 151.
In determining the certainty required, it cannot be forgotten that the disclosure is not addressed to the public generally, but to those skilled in the art. Mark v. Greenawalt, 32 App. D. C. 253 (1908); Mowry v. Whitney, 81 U. S. 620 (1871). In the instant case, appellant has disclosed a process which, due to its generic nature, requires varying sets of conditions depending upon the material to be treated. Appellant has set forth the steps of the process, several of which are defined in terms of the physical characteristics of the products formed by such steps. He has described apparatus suitable for the determination of the conditions necessary to obtain said characteristics. The board does not assert that one skilled in the art would have difficulty determining these conditions by means of this apparatus; indeed, it is obvious that only simple, well known laboratory techniques are required. The affidavit of Carter is testimony to this. What then, is appellant’s disclosure lacking ? This is not a case where the operativeness of the process is questioned, in which case different questions might be raised. The board is only of the opinion that there is not *987 disclosure sufficient to instruct one skilled in tbe art bow to perform the process set forth. We are of the opinion that the disclosure is sufficient.
As was stated in Lever Bros. Co. v. Procter & Gamble Mfg. Co., 139 F. 2d 633 (4th Cir. 1943) :
The experimentation, for which the patent provided within its borders, was not necessary either to determine just what the process discloses or to practice the process and determine whether or not the process was workable; rather was this experimentation necessary, under a workable process, to adapt this process to the particular materials, desires and needs of the individual * * * employing it.
See also Minerals Separation, Ltd. v. Hyde, 242 U. S. 261, 270, 271 (1916).
With respect to the rejection based upon inadequacy of disclosure, the examiner was further of the opinion that the specification fails “to support the contention that the products are released directly in the liquid state.” (Italics quoted.) We agree with appellant that whether the products are released directly in the liquid state or are formed at the substance by almost simultaneous vaporization and condensation steps, is immaterial. Appellant’s process is based upon the formation of liquid products substantially at the substance being treated and the handling of such products from the time of formation t hereof. None of the method claims call- for more than this. It is well established that an applicant for patent need not understand the theory of operation of this invention. Eames v. Andrews, 122 U. S. 40 (1887).
Claim 38 was further rejected by the board as unpatentable over Trent. The board was of the opinion that the sole substantial difference between the Trent process and that of this claim was that Trent does not state that liquid decomposition products “form substantially at the substance”; that “the claim does not satisfy the requirements of 35 U. S. C. Section 112 since merely heating ‘to progressively increasing temperatures’ does not distinguish from Trent and the limitation that the temperatures are ‘substantially no greater than will progressively cause liquid decomposition products to form substantially in (sic) the substance’ is not supported by any definite iJlustrative teaching in the specification and accordingly cannot be relied on to patentably distinguish the claim from Trent”; that a “claim which thus relies on a functional statement to distinguish from the art does not, in our opinion, comply with Section 112 of the statute when one cannot determine from the specification for even one kind of substance being treated just what progressively increasing temperatures and other conditions should be used to secure the formation of liquid decomposition products at the substance.”
*988 It is somewhat difficult to comprehend the board’s rejection of this claim. The board seems to be referring to the first paragraph of 35 U. S. C. 112 in its rejection (as it did in its rejection based upon inadequacy of disclosure) although this paragraph relates solely to the specification and not to the claims. It is obvious that a claim may comply with Section 112 in that it particularly points out the subject matter which the applicant regards as his invention (and thus meets the requirements of the second paragraph of 35 U. S. C. 112, which paragraph is directed to the claimed subject matter) and yet the applicant may nevertheless be denied a patent on this claim due to his failure to comply with the first paragraph of said section. But as heretofore stated, we are of the opinion that appellant has complied with the first paragraph of Section 112. Since we do not construe the board’s rejection on the art to be based on the failure to comply with the second paragraph of Section 112, it is unnecessary to consider whether claim 38 particularly points out and distinctly claims the invention to which it is directed. In this connection, however, see the Minerals Separation, Ltd. case, supra, at pages 270 and 271.
We feel that claim 38 clearly defines over Trent. While Trent’s process is generally similar to that defined by this claim, it is clear that Trent heats his material to such a degree that the decomposition products come off as vapors, requiring the conventional condensing equipment normally employed in distillation processes. Thus, though Trent does refer, on several occasions, to condensate collecting in the collecting pans located immediately beneath the bed of material undergoing treatment and to the fact that “the products of distillation (drop into the pans” [emphasis added], it is clear, viewing the disclosure as a whole, that Trent’s process is essentially different from appellant’s. Trent refers throughout his specification to the use of condensers and to the passage of vaporous products from one zone to another. There is no question but that whatever condensate is formed in the collecting pans is incidental.
We are of the opinion that this difference over the prior art, effectively eliminating the conventional condensation requirements of the standard distillation process, would not be obvious to the skilled artisan and amounts to invention.
Claim 41, which was rejected by the board on Trent, is dependent upon claim 38, containing all the limitations thereof, and is therefore deemed patentable for the reasons set forth above.
Claims 39,40 and 43, which were rejected by the board on Trent, are similar in extent to claim 38, varying to a minor extent in scope and *989 wording from said claim, and are deemed patentable for the afore-stated reasons.
Claims 7 and 8 were rejected by the board as unpatentable over Trent in view of Karrick. These claims are dependent upon claims 39 and 40, respectively, and contain the respective limitations thereof. Inasmuch as Karrick does not supply the basic deficiencies of Trent (Karrick was applied merely to show the expedient of radiant heating) , these claims are deemed patentable for the reasons stated above.
Claim 16 was rejected by the board on Trent in view of Storrs, the latter patent being used merely to show the step of extruding carbonized char as it is removed from a heating zone. Claim 16 is dependent upon claim 43, which we have previously held to be patentable; the board is accordingly reversed as to its rejection of this claim.
Claim 44, rejected by the board as unpatentable over Trent, while much broader than the foregoing claims, sets forth the essential limitations relating to the application to the substance under treatment of only so much heat as will produce liquid decomposition products and maintain them in liquid condition during the recovery thereof. The board is accordingly reversed as to its rejection of this claim for the reasons heretofore set forth.
Claims 42, 46 and 14, also rejected by the board as unpatentable over Trent, define the process in two steps: (1) heating the substance only to the extent that will cause liquid decomposition products to form substantially at the substance of the material undergoing treatment, and (2) recovering said products solely by gravity separation. We are of the opinion that these steps in combination, define over Trent and that, therefore, the board’s rejection of these claims must be reversed. Trent, as has been heretofore discussed, heats his material beyond the point at which liquid decomposition products would be formed, vaporizing them. Trent, as well, does not separate the decomposition products from the material solely by gravity separation. Claim 47 also defines appellant’s process in two steps: (1) heating the substance only to the extent of “producing a series of distillation products in primary liquid and heavy vapor states” and (2) selectively recovering the evolved decomposition products solely by gravity separation. Under the well established law that terms in the claims of a pending application are deemed to be used in their common signification unless it clearly appears from the specification that the terms are to be used otherwise, In re Tamarin, 38 C. C. P. A. (Patents) 872, 187 F. 2d 160, 88 USPQ 490, the first step above mentioned would define *990 nothing more than the standard vaporization step employed by Trent.[3] The board, however, apparently construed this phrase to be the equivalent of “in liquid form.” Since our consideration of this case is restricted to the grounds of rejection below as set forth in the appellant’s reasons for appeal, we are constrained to accept the board’s interpretation. This claim, accordingly, defines the same steps as do claims 42, 46 and 14, and is patentable over Trent for the reasons heretofore set forth. The rejection of the board as to this claim is therefore reversed.
Claims 48 and 22 define apparatus for practicing the process heretofore discussed. The defined apparatus differs in substance from that shown by Trent only in that the hood covering the material-supporting element of the claimed apparatus has an open bottom and is spaced laterally from said element, thus leaving an opening through which the center of the retort may communicate with the atmosphere. The advantage of such a provision is alleged by appellant to reside in the effective exclusion of air from the retort, by means of the displacement action of the fixed gases evolved during the process, without the need of seals and suction apparatus. The board rejected these claims on Trent, holding the cover structure of Trent (a completely closed structure) to be the substantial mechanical equivalent of the cover recited in these claims. The examiner, in referring to claim 50, stated that it was “apparent that a complete cover as shown by Trent could be used instead of the partial cover described in the claim with no changes in the function of the apparatus.” This statement is equally applicable to claims 48 and 22. In the consideration of the patentability of these claims it is immaterial that the Trent apparatus may be used in lieu of that defined by appellant. Each of two apparatuses may be effectively utilized to practice a given process yet each apparatus may be patentably distinct from the other. Thus, while we do not dispute the fact that both Trent’s apparatus and that defined by appellant may be used to practice appellant’s process, we are of the opinion that the claimed cover is not the mechanical equivalent of Trent’s cover and that these claims patentably define over Trent. Without questioning the operability of the claimed apparatus (which question was not *991 raised below and thus may not be here considered), it is evident that while the claimed cover will permit the effective exclusion of air from the retort without the use of seals and suction apparatus, the cover of Trent will not. Such a modification of Trent would not, in our opinion, be obvious to one skilled in the art. The board’s rejection of these claims is accordingly reversed.
We are of the opinion, however, that the board correctly rejected claim 50 as unpatentable over Trent. Again, the only substantial difference between the here defined structure and that of Trent resides in the hood used to cover the material-supporting element. However, this hood is defined in this claim as “open at its bottom but otherwise closed, covering the retort structure down to a level below the said support.” There is no recitation in this claim, as in claims 48 and 22, that the cover is spaced laterally from the material-supporting element nor that the retort remains unsealed. In view of this fact, we do not see that this claim distinguishes over the sealed structure shown by Trent. A hood may be open at its bottom (as most are) and yet may be in air-tight association with that which it covers. The rejection of the board as to this claim is accordingly affirmed.
For the foregoing reasons the decision of the Board of Appeals is reversed as to claims 7, 8, 12,14, 16, 22, 38-44 and 46-48 and affirmed as to claim 50.
Worley, J., because of illness, was not present at the argument of this case and did not participate in the decision.
Jackson, J., retired, recalled to participate herein in place of Cole, J., absent because of illness.

 Daniels, 2,091,702, August 31, 1937, was applied by the examiner in the rejection of claims 27 and 50. The board reversed the examiner as to claim 27 and, though it affirmed him as to claim 50, expressly eliminated Daniels as a. reference against this claim. Lowry, “Chemistry of Coal utilization,” Wiley & Sons, 1945, chapter 20, pages 761 to 773, was cited by the examiner as of general information, but was not applied against any of the appealed claims by either the examiner or the board. Therefore, neither Daniels nor the Lowry article will be considered in this opinion.

 “The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, * *

 Appellant originally argued that the phrase “heavy vapor state” referred to clouds of minute liquid droplets (as contradistinguished from “low density vapors.” which would, refer to “vapors” as ordinarily defined) as originally disclosed in his specification. Appellant, however, has extensively amended his specification to eliminate reference to “heavy vapors” and the like and has substituted therefor phrases more aptly designed to describe his process. In view of these amendments we are of the opinion that the specification in its present state does not support a meaning of “heavy vapors” other than that normally employed in the distillation art. Though we have stated that Trent’s material is heated to a degree sufficient to vaporize the decomposition products, no doubt a small portion of said products remain in their “primary liquid” state.