45 C.C.P.A. (Patents).

**Application of Ernest W. FRANCK and Stephen A. Schettini.**

**Patent Appeal No. 6315.**

United States Court of Customs and Patent Appeals.

June 18, 1958.

Emery, Whittemore, Sandoe & Dix, New York City (Nichol M. Sandoe, New York City, of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY and RICH, Judges.

JOHNSON, Chief Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, re-

jecting claims 13, 14 and 15 [1] in appellants' application No. 200,036, filed December 9, 1950, for "Film and Method of Making Same." The single issue on this appeal is set forth in the brief for the Solicitor as:

" * * * whether the Board of Appeals was in error in affirming the rejection of claims 13, 14 and 15 as failing to conform to the provisions of Section 112 of Title 35 of the United States Code, the pertinent portion of which reads as follows:

"*Specification*. The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

Claim 13 is illustrative of the appealed claims and reads as follows:

"13. The method of applying to a film a magnetic sound track in the form of a stripe of less width than the width of the film and having substantially straight edges, comprising flowing onto said film a narrow stripe of a dispersion consisting of solid magnetizable particles suspended in a liquid binder capable of wetting said film and simultaneously therewith wetting the film surface along each side of the stripe with said binder in continuous areas along each side of the stripe having substantially straight outside edges which define the final stripe width, and covering said wetted areas by lateral movement of said dispersion to said outside edges of said areas."

■ The appealed claims relate to a method of applying a magnetic sound tract to film. While applicants admit that it is generally old to apply magnetic material in a stripe to film, they urge that, in the past, difficulties have been encountered in applying the material in a narrow stripe with uniform straight edges. They claim to have avoided prior difficulties by the particular method presented. In their preferred embodiment, applicants utilize a particular type of applicator with which the magnetic dispersions of their alleged invention are applied. The applicator contains an open-bottom trough whose sides are formed by two thin, parallel plates, spaced laterally, and which ride on the film to be coated as the film is moved relative to the applicator. A scraper or doctor blade located at the rear of the applicator serves to level off the dispersion applied. The specification states that the liquid binder of the dispersion will run under the two parallel plates to wet the film along the straight line formed by those plates. The magnetic dispersion is said to flow laterally of its own accord, to the edge of the wetted area, resulting in a straight-edged magnetic stripe. In another embodiment, that of claim 14, the film is separately wetted and magnetic material is subsequently applied to the wetted areas, said material laterally spreading of its own accord.

The only description in the specification relating to the magnetic material used is as follows:

"* * * The magnetic material may be iron oxide or the like in a pulverous state dispersed through the binder. While the magnetic material is herein referred to as in a pulverous state, by this it is intended to describe the condition of the material. The material used is very finely divided or in particle size of extreme fineness, although the precise fineness is not critical and is not herein defined.

"At the time of its application, *the mixture is paint-like or paste-like*. Thus there is a permissible range as to viscosities in the mixture of mag-

---

[1.] Claim 12 was rejected by the board over the prior art, but since applicants have not appealed from this rejection, this claim is not now before us.

netic material and binder. *At present, it is preferred that the mixture is not watery but is of a heavy consistency to have only a slight tendency to flow of its own volition, but which yet may be caused to flow or spread to a limited extent.* (Emphasis added.)

The board was of the opinion that the foregoing description was insufficient to comply with the requirements of the first paragraph of 35 U.S.C. § 112. In order to understand fully the board's position, we quote significant portions of its opinion:

"\* \* \* There are no statements of permissible viscosities, nor are there illustrative mixtures of liquid binder and pulverized magnetic material.

\*    \*    \*    \*    \*

"It is evident from the specification that not all compositions comprising a pulverized magnetic material and a liquid binder would be operative in accordance with the claimed method. The degree of fineness must be a significant factor in obtaining a stripe of the desired character. The specification plainly states that there is a restricted range of operative viscosities. The process here contemplated is in some respects similar to the use of a ruling pen by a draftsman. It seems to us that an attempt to use a material of a consistency similar to a drawing ink would result in failure by reason of the running of the ink. It would also appear that a composition of the type employed in lithograph printing and comprising a bodied oil with a suspension of finely divided solid particles would likewise be inoperative because of the high viscosity of the binder. Liquid binders of the type of bodied linseed oil and without volatile solvents are illustrative of a class of very high viscosity compositions. Other compositions might be prepared by dissolving a solid binder such as a resin or gum in a thin volatile solvent. It is apparent that an operative magnetic sound track could be prepared employing either of the just mentioned vehicles with any convenient quantity of powdered magnetic material, but it seems to us impossible to assume that both classes of compositions suggested would be operative in the presently claimed method.

"The specification in our opinion indicates that the selection of the components and the compounding of the composition are restricted beyond the restrictions required to merely prepare an operative sound track. Under such circumstances the failure to define the physical qualities of operative compositions and the failure to disclose illustrative compositions is fatal to the claims in consideration.

On reconsideration, the board indicated that the specification did not set forth the "best mode contemplated" by applicants of carrying out their invention, as required by 35 U.S.C. § 112. The board also reasserted its position to the effect that there was not a sufficient description to enable the skilled artisan to make and use applicants' asserted invention. The board stated in this respect that:

"The specification states that there are limited operative ranges of viscosity and of degrees of fineness of particles. While there is no positive statement as to a limited operative range of ratios of binder to magnetic particles, the description of the mode of operations is indicative of the existence of such limits. It thus appears that the claimed process is operative only with a restricted class of compositions having certain required physical properties. The specification indicates such restrictions for operativeness but does not clearly delineate the operative field nor present illustrative subject matter to furnish a guidance to anyone wishing to follow the claimed process."

We are of the opinion that the board's decision was erroneous and must be reversed.

We would agree that the aforequoted portion of applicants' specification would indicate that there is a limited operative range of viscosities of the magnetic dispersion. Had applicants stopped at this point and said no more, their specification would be fatally defective. Such is not the case, however. As may be seen by reading the pertinent portion of their specification, supra, it is suggested that, at the time of its application, the mixture be "paint-like or paste-like." It is also suggested that the mixture be of "a heavy consistency to have only a slight tendency to flow of its own volition, but which yet may be caused to flow or spread to a limited extent." Even assuming that the latter description is on the vague side, it is difficult for us to see how one skilled in the art would be at a loss as to what to do having been told that the mixture should be "paint-like" or "paste-like." Even the uninitiated would have little trouble following the instructions set forth in the instant specification.

What was said by this court in In re Storrs, 245 F.2d 474, 478, 44 C.C.P.A., Patents, 981, is apposite here:

"* * * it must be borne in mind that, while it is necessary that an applicant for a patent give to the public a complete and adequate disclosure in return for the patent grant, the certainty required of the disclosure is not greater than that which is reasonable, having due regard to the subject matter involved. In re Hudson, 205 F.2d 174, 40 C.C.P.A., Patents, 1036.

"In determining the certainty required, it cannot be forgotten that the disclosure is not addressed to the public generally, but to those skilled in the art. [citations] * * *

"As was stated in Lever Bros. Co. v. Procter & Gamble Mfg. Co., 4 Cir., 1943, 139 F.2d 633, 638:

"The experimentation, for which the patent provided within its bor-

ders, was not necessary either to determine just what the process discloses or to practice the process and determine whether or not the process was workable; rather was this experimentation necessary, under a workable process, to adapt this process to the particular materials, desires and needs of the individual * * * employing it."

We are of the opinion that applicants have fully satisfied the foregoing requirements of the law. Having stated that the mixture should be "paint-like" or "paste-like," we do not think it was incumbent upon applicants to go further and give specific illustrative examples of their compositions. While such additional disclosure might serve to more clearly describe the subject matter involved, we do not think that the disclosure is fatally defective without it.

█ It is equally clear that the board erred when it stated that applicants have not set forth "the best mode contemplated" of carrying out their invention, for not only is their description of the consistency of the magnetic dispersion satisfactory, but they have described a particular apparatus for applying this dispersion to film. For the foregoing reasons the board's rejection of the appealed claims is reversed.

█ Since the only rejection before us is the one on failure to satisfy the requirements of the first paragraph of 35 U.S.C. § 112, we have no choice but to reverse the board as to all three claims on appeal. It has come to our attention, however, that claim 15 is dependent upon claim 12, which claim was rejected as unpatentable over the prior art. This rejection was not appealed from. Since all that claim 15 adds to claim 12 is a drying step, a limitation which would clearly not render claim 15 patentable over the reference applied against claim 12, it is obvious that the board (as well as the Solicitor and the applicants) committed an oversight when it grouped claim 15 with claims 13 and 14. Since our jurisdiction is limited by statute, 35 U.S.C. §

144, we can do no more than to point out what appears to be a patent error.

The decision of the Board of Appeals is reversed.

Reversed.